## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| LAILANI TURNER § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:25-cv-9 |
| § | |
| MOVIE GRILL CONCEPTS § | |
| XXXI, LLC d/b/a STUDIO § | JURY TRIAL DEMAND |
| MOVIE GRILL § | |
| § | |
| Defendant. § | |

## COMPLAINT

Plaintiff LAILANI TURNER ("Plaintiff") by and through her attorneys, brings this action against Defendant MOVIE GRILL CONCEPTS XXXI, LLC d/b/a STUDIO MOVIE GRILL ("Defendant" or "SMG"), for damages and other legal and equitable relief from Defendant's unlawful discrimination and retaliation against Plaintiff based on her race, Black.

## INTRODUCTION

1. This is an action brought by Plaintiff seeking damages from Defendant for acts of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, *et seq.* ("Section 1981"), the Texas Labor Code, as amended, Tex. Lab. Code §§ 21.001, *et seq.* ("TLC"), and any other cause of action that can be inferred from the facts set forth herein.

2. Defendant employed Plaintiff in Arlington, Texas. During Plaintiff's employment with Defendant, Plaintiff was subjected to discrimination based on her race, Black, and was retaliated against for reporting race discrimination.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C. § 2000e, *et seq.*, as amended, and (iii) 42 U.S.C. § 1981, *et seq.*, as amended.

4. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this Court in as much as the unlawful employment practices occurred in this judicial district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendant maintains offices, conducts business, and resides in this district.

## PARTIES

6. Plaintiff LAILANI TURNER is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, a resident of Arlington, Texas.

7. At all relevant times, Plaintiff was Defendant's employee and therefore covered by Title VII, § 1981 and the TLC.

8. Defendant MOVIE GRILL CONCEPTS XXXI, LLC d/b/a STUDIO MOVIE GRILL ("Defendant" or "SMG") is a dine-in movie theater business with locations throughout the United States, including throughout the state of Texas. Plaintiff was employed by SMG at its

Arlington Square theater, located at 452 Lincoln Square, Arlington, Texas 76011.

9. SMG employs over fifteen (15) employees.

10. During all relevant times, SMG has been an employer covered by Title VII, § 1981 and the TLC.

11. SMG transacted and continues to transact business in Texas by, among other things, employing persons located within Texas and within this judicial district. SMG's headquarters are located at 12404 Park Central, Suite 400n, Dallas, Texas 75251.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

12. Plaintiff has timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).

13. Plaintiff received her Notice of Right to Sue letter from the EEOC within 90 days prior to the filing of this Complaint.

## STATEMENT OF FACTS

14. Plaintiff was employed by SMG as a Server beginning approximately June 2021 until her retaliatory termination on July 15, 2022.

15. Throughout Plaintiff's employment with SMG, Plaintiff was subjected to discriminatory comments based on her race, Black. Plaintiff's white coworkers repeatedly used the n-word around her, despite Plaintiff's numerous requests for them to stop.

16. One of Plaintiff's white coworkers, Steven Vuong, told another SMG employee that Plaintiff "sounds Ghetto when [she] gets mad." After Mr. Vuong made this comment in front of Plaintiff, she expressed her discomfort with his comment.

17. In or around August 2021, when Plaintiff was in the kitchen with other coworkers, Steven Vuong told Plaintiff that "He knew [Plaintiff] didn't grow up with a dad because [she] was Black."

18. Approximately two weeks later, Plaintiff approached her Manager, Benjamin Anderson, and told him about the race-based comments she was being subjected to. He told Plaintiff that it was "not ok," and that he had Black and Mexican friends.

19. Mr. Anderson also made racially based comments to her such as "Well, Black people have to work just as hard."

20. Even after Plaintiff's complaint to Mr. Anderson, the race-based harassment continued unchecked.

21. In or around November 2021, a Manager, Gabby Castillio, told Plaintiff that she heard another Manager, Matt Ducey, discussing an encounter with a Black customer. Mr. Ducey said the customer had been difficult, and said that "it's always the n******." He further suggested that SMG hiring more non-white employees was the reason SMG's Black customers were being more difficult. Gabby also told Plaintiff that the Managers had a group chat, and that they were discussing Mr. Ducey's comment in the group chat. Mr. Anderson and other managers commented that they did not think that the use of the "n" word was that severe, and they suggested that because they had Black friends the use of the "n" word was not inappropriate.

22. In or around January 2021, Plaintiff called HR to express her concern about the harassment to which Plaintiff was being subjected. Plaintiff left a voicemail when she was sent to an automated voice message.

23. On or around February 7, 2022, Plaintiff spoke to Mr. Anderson to formally report the harassment she was being subjected to based on her race. Plaintiff also asked Mr. Anderson to

provide Plaintiff with the number for SMG's Human Resources department, explaining to him that she had previously called HR but was sent to an automated voicemail.

24. On February 12, 2022, Plaintiff and a white coworker, Zack (LNU), were having a conversation. During their conversation, Zack used the "n" word.

25. When Plaintiff expressed that the use of the n-word bothered her, and requested that her coworkers stop using the word, her coworkers would simply respond "it's okay because we have Black friends."

26. SMG did not issue any discipline in connection with Plaintiff's reports to HR and her Manager. As a result of SMG's failure to take preventative action in response to Plaintiff's complaints, the harassment continued.

27. After reporting the discrimination, Plaintiff's workplace environment drastically shifted, and it quickly became apparent that Plaintiff was being subjected to retaliatory treatment for reporting race discrimination.

28. On or around March 12, 2022, Mr. Anderson called Plaintiff into the Managers' office. Mr. Anderson threatened to fire Plaintiff based on an alleged "no-call, no-show," despite Plaintiff following Defendant's policies and notifying Mr. Anderson beforehand.

29. Additionally, although Mr. Anderson was supposed to train Plaintiff for a previously discussed promotion to a management position, he declined to train Plaintiff after her complaint of discrimination, and instead began training two new White employees with less experience than Plaintiff.

30. On or around July 5, 2022, Nicole Hart, an SMG Manager, yelled at Plaintiff, claiming that employees were talking about Plaintiff's reports to Mr. Anderson and "talking shit about [Plaintiff]" behind her back, saying that she "wanted [her] to know."

31.     Later that same day, another SMG Manager, Julian (LNU), came into the theater where Plaintiff was working and told her "it wasn't a big deal" that other employees had been talking about Plaintiff behind her back. In response, Plaintiff told Julian that he would feel upset too if the same thing were happening to him. Julian then pushed Plaintiff. Plaintiff demanded that Julian "keep his hands off of [her]."

32.     Plaintiff reported this incident to Mr. Anderson. However, Mr. Anderson quickly dismissed Plaintiff's complaint, claiming he was not present during the altercation and could not know for sure what had occurred. Plaintiff then called HR to report the incident and left a voicemail after receiving no response.

33.     The next day, July 6, 2022, Plaintiff was contacted by a coworker, Madison Brown. Ms. Brown warned Plaintiff that everyone knew Plaintiff had complained to HR and that they were discussing it at work. Plaintiff again called HR and left a voicemail reporting that her coworkers were discussing her HR report, and expressed that she was concerned that there was a lack of confidentiality. Plaintiff also submitted a report to HR via e-mail.

34.     On July 9, 2022, when Plaintiff arrived at work, her coworkers were talking about the July 5, 2022 incident and about Plaintiff's report to HR. Several of Plaintiff's coworkers told Plaintiff that they "couldn't say anything around [her]" because she might report them to HR. That night, Plaintiff again called HR to report her concern about the lack of confidentiality regarding Plaintiff's complaint to HR.

35.     On or around July 10, 2022, Plaintiff was called into a meeting with Kimberly Macias in HR and suspended, effective immediately. Plaintiff was told that the reason for the suspension was because she allegedly was creating a "hostile work environment."

36. Upon information and belief, HR then coerced employees into filing false statements against Plaintiff. HR specifically instructed employees to name Plaintiff and her sister in complaints. Plaintiff immediately called HR and left a voicemail to report these actions. Approximately an hour after this call, Plaintiff was told she was suspended.

37. On July 12, 2022, Jenna Patrick, Vice President for Human Resources, called Plaintiff. Ms. Patrick instructed Plaintiff not to record the conversation. Plaintiff reiterated her complaints about the race-based comments, the July 5th incident, and the retaliation against Plaintiff. Ms. Patrick told Plaintiff she would look into it.

38. Three days later, on or around July 15, 2022, Ms. Patrick and Matt Lindsey, Area Director, called Plaintiff and terminated her.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*
(Discrimination – Disparate Treatment)**

39. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

40. The conduct alleged herein violates Title VII as the Defendant has engaged in the practice of discrimination against the Plaintiff based on her race, Black, by subjecting her to disparate treatment in the terms and conditions of her employment.

41. Plaintiff's requests for relief are set forth below.

### AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*
(Hostile Work Environment, Race)**

42. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

43. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, as Defendant has engaged the practice of discrimination by subjecting Plaintiff to a racially hostile work environment.

44. Plaintiff's requests for relief are set forth below.

### AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
**Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, *et seq.*
(Discrimination – Disparate Treatment)**

45. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

46. The conduct alleged herein violates Section 1981 as the Defendant has engaged in the practice of discrimination against the Plaintiff based on her race, Black, by subjecting her to disparate treatment in the terms and conditions of her employment.

47. Plaintiff's requests for relief are set forth below.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
**Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, *et seq.*
(Hostile Work Environment, Race)**

48. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

49. The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, *et seq.*, as Defendant has engaged the practice of discrimination by subjecting Plaintiff to a racially hostile work environment.

50. Plaintiff' requests for relief are set forth below.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF**
**The Texas Labor Code, as amended, Tex. Lab. Code §§ 21.001, *et seq.***
**(Discrimination – Disparate Treatment)**

51. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

52. The conduct alleged herein violates the TLC as the Defendant has engaged in the practice of discrimination against the Plaintiff based on her race, Black, by subjecting her to disparate treatment in the terms and conditions of her employment.

53. Plaintiff's requests for relief are set forth below.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF**
**The Texas Labor Code, as amended, Tex. Lab. Code §§ 21.001, *et seq.***
**(Hostile Work Environment, Race)**

54. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

55. The conduct alleged herein violates the Texas Labor Code, as amended, Tex. Lab. Code §§ 21.001, *et seq.*, as Defendant has engaged in the practice of discrimination by subjecting Plaintiff to a racially hostile work environment.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all matters raised in this Complaint.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

A. A judgment declaring that the practices complained of herein are unlawful and in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, *et seq.*; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; and the Texas Labor Code, as amended, Tex. Lab. Code §§ 21.001, *et seq.*;

B. All damages which Plaintiff has sustained as a result of Defendant's conduct, including back pay, front pay, benefits, general and specific damages for lost compensation, liquidated damages, and job benefits she would have received but for Defendant's discriminatory practices, as well as compensatory damages, including damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and and other nonpecuniary losses;

C. Exemplary and punitive damages in an amount commensurate with Defendant's ability and so as to deter future malicious, reckless, and/or intentional conduct;

D. Awarding Plaintiff the costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

E. Pre-judgment and post-judgment interest, as provided by law;

F. That the Court retain jurisdiction over Defendant until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

G. Granting Plaintiff other and further relief as this Court finds necessary and proper.

Plaintiff also seeks injunctive relief, including, but not limited to:

H. Training on the subject of employment discrimination for all of Defendant's employees;

I. Implicit bias training for all managers conducted by reputable outside vendors;

J. Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

K. Active monitoring of the work areas to ensure compliance with discrimination

   policies; and

   L. Monitoring by the Court or a federal agency to ensure that Defendant complies with all injunctive relief.

Plaintiff further demands that she be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated: January 3, 2025

Respectfully submitted,

*/s/ Jay D. Ellwanger*
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
Madison Chilton
Texas State Bar No. 24132727
mchilton@equalrights.law
**ELLWANGER HENDERSON LLLP**
11149 Research Blvd., Suite 100
Austin, Texas 78759
Telephone: (737) 808-2260
Facsimile: (737) 808-2238

David W. Henderson
Texas State Bar No. 24032292
dhenderson@equalrights.law
**ELLWANGER HENDERSON LLLP**
400 S. Zang Blvd. Ste. 600
Dallas, Texas 75208
Telephone: (469) 998-6775
Facsimile: (469) 998-6775

**COUNSEL FOR PLAINTIFF**